## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JUDITH CUEVAS** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CAUSE NO. 1:10CV104 LG-RHW** |
| | § | |
| **T&J'S LAST MINUTE SEAFOOD** | § | |
| **EXPRESS, INC. and** | § | |
| **TIMOTHY HUGHES** | § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER

BEFORE THE COURT are: 1) the Motion [78] for Partial Summary Judgment, filed by T&J's Last Minute Seafood Express, Inc.; 2) the Motion [80] for Partial Summary Judgment on all Claims for Punitive Damages, filed by Timothy Hughes; and 3) the Motion [93] to Strike Designation of Experts, filed by T&J's. The motions have been fully briefed. After due consideration of the issues presented and the relevant law, it is the Court's opinion that T&J's Motion for Partial Summary Judgment should be denied in regard to the causation issue and granted in all other respects, Hughes's Motion for Partial Summary Judgment should be granted, and T&J's Motion to Strike Designation of Experts should be denied.

FACTS

According to the Amended Complaint, Defendant Timothy Hughes was employed by Defendant T&J's Last Minute Seafood Express, Inc. as a truck driver. While operating a T&J's truck on Interstate 10 in the early morning hours of December 5, 2009, Hughes collided with the rear of Plaintiff Cuevas's vehicle. She lost control of her vehicle, and overturned in the embankment. She alleges that Hughes did not stop

or notify anyone else of the accident, but continued his travel along the Interstate. Approximately three hours later, Cuevas escaped her vehicle and walked to a Cracker Barrel Restaurant to summon medical help. After a news report of the hit and run accident was published by a local television station, Hughes turned himself in to the Gulfport Police Department. He told investigating officers that he was paying more attention to the truck's temperature gauge than the road, because a leak or defect caused him to have to continuously add coolant.

Cuevas alleges that Hughes was negligent in causing the accident and grossly negligent in leaving the scene of the accident. In addition, she alleges that T&J's was negligent in failing to properly train and supervise Hughes, and in failing to properly maintain the truck so as to avoid the overheating problem that diverted Hughes' attention from the road. Cuevas seeks compensatory and punitive damages from the Defendants.

T&J's has moved for partial summary judgment in its favor as to its alleged failure to train and supervise Hughes, its alleged failure to properly maintain the truck, and as to any demand for punitive damages. T&J's also argues that Cuevas cannot show that injuries to her right knee were proximately caused by the accident. In this regard, T&J's also moves for exclusion of Dr. Johansen's supplemental report, which T&J's asserts contains opinions that are not reflected in his medical records. Hughes has moved for partial summary judgment in his favor as to any demand for punitive damages, and has joined in T&J's summary judgment motion on the issue of causation.

-2-

THE LEGAL STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 325. Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to the particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence

or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

DISCUSSION

Hughes testified that he reported to work in Bayou La Batre, Alabama around one o'clock a.m. on the morning of December 5, 2009. He was to pick up a load of fish in Houma, Louisiana. He performed a pre-trip inspection of the truck and noted no problems other than that the coolant fluid level was low and required two or three gallons to fill. He testified that the accident occurred around three o'clock a.m., just as he looked up from the truck's gauges to see Cuevas's vehicle in front of him. He was traveling in the center lane of the interstate and unsuccessfully tried to change lanes to avoid Cuevas's vehicle. After the impact, he pulled over as soon as he could and ran back to where he thought the impact had occurred. He did not see any sign of a person or a vehicle, and thought that the driver must have left the scene. He then pulled his truck off the interstate and waited in the nearby Home Depot parking lot to see if there was any sign of emergency vehicles and to check his truck for damage. During this time he called his supervisor and told him he had been in an accident. He waited until six a.m., and then proceeded on to Houma. He returned to Bayou La Batre at one o'clock p.m. the same day. He turned himself in to the Gulfport police department around three p.m. the next day after viewing an internet report of a hit and run accident. He underwent a drug test almost four months later, on March 23, 2010. The test was negative.

**Negligent Failure to Train and Supervise**

T&J asserts that Cuevas cannot support her claim that it breached its duty to properly train and supervise Hughes regarding the coolant system.  Cuevas alleges that the leaking or defective coolant system diverted Hughes' attention from the road, thereby causing the accident.

To prevail on a negligence claim, the plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury. *Leflore Cnty. v. Givens*, 754 So.2d 1223, 1230 (Miss. 2000) (citations omitted).  T&J's challenges the breach and causation elements, arguing that Cuevas cannot show that it failed to train or supervise Hughes, or that such a failure was the proximate cause of the accident.

T&J's first argues that it did not fail to train or supervise Hughes.  Hughes received formal training at a truck driving school and had a commercial driving license.  He was aware of the need to check and maintain the fluid levels of the truck. Hughes testified that he did check the fluid levels prior to driving the truck, and added what he considered to be a small amount of coolant to fill the reservoir.  He checked the levels again after crossing from Alabama to Mississippi, and found no additional coolant was needed.   T&J's points to Cuevas's failure to argue or submit evidence showing that T&J's training or supervision of Hughes was inadequate.  Accordingly, Cuevas is unable to establish the breach element of her negligent training and supervision claim.  It is unnecessary to examine evidence of the remaining elements. T&J's is entitled to summary judgment in regard to Cuevas's negligence claim for

failure to train and supervise.

## Negligent Failure to Maintain

Cuevas alleges that T&J breached its duty of reasonable care to insure that the truck had been properly maintained and was safe for operation on the public highways when it knew or should have known that the truck had a defective coolant system. T&J's argues that there is no evidence the truck was not properly maintained. Although Cuevas alleges that T&J knew or should have known that the truck had a defective coolant system, she does not present any evidence in support of her allegation. The evidence before the Court shows that Hughes considered the coolant amount he added before his trip to be minimal and not necessarily an indication of a leak or defect. He did not inform his supervisor of the coolant fluid level. His supervisor, Robert Sprinkle, considered the amount of coolant added to be minimal and not necessarily an indication of a leak or defect. There is no evidence of previous problems or repairs of the coolant system, which would indicate that T&J either had or should have had knowledge that the truck's coolant system was defective. Accordingly, T&J's is entitled to summary judgment in regard to Cuevas's negligence claim for failure to properly maintain the truck.

## Causation

The Defendants argue that Cuevas cannot show that the knee injury requiring surgery was caused by this accident, because she has no expert testimony establishing causation. Cuevas designated her treating physician, Dr. Johansen, as a medical expert. She did not provide a report, but she did provide Dr. Johansen's medical

records.  The Defendants argue that Dr. Johansen's medical records do not contain any indication that he had an opinion that Cuevas's knee injury was due to the accident. The primary diagnosis was degenerative joint disease with right knee meniscus tear. There is no mention of the accident in the medical records.

After the Defendants moved for summary judgment on this basis, Cuevas supplemented her designation of Dr. Johansen to include an "Impairment Rating" completed on January 13, 2011.  The Rating states that "Cuevas sustained a right knee injury on December 5, 2009 when she was involved in a semi-tractor trailer versus automobile accident."  Pl. Suppl. Desig. Ex. 1, ECF No. 91-1.  T&J's moved to exclude any testimony regarding this causation opinion.

Cuevas is required to designate treating physicians as experts, but she is excused from providing the written expert report otherwise required of designated experts.  *See* FED. R. CIV. P. 26(a)(2)(A) & (B)*;* L. U. CIV. R. 26(a)(2)(D).  In addition to the designation, Cuevas is required to "disclose the subject matter on which the witness is expected to present evidence . . . and a summary of the facts and opinions to which the witness is expected to testify."  L. U. CIV. R. 26(a)(2)(D).

Cuevas's initial designation of Dr. Johansen complied with the Rules.  Although she refers to Dr. Johansen's office records, she also summarizes his opinions, stating that he was expected to testify "that the Plaintiff's injuries were proximately caused by the December 2009 motor vehicle accident; . . ."  Pl. Desig. 2, ECF No. 38.  The Defendants rely on cases in which the initial designation was clearly inadequate and therefore testimony was limited to the opinions contained in the medical records.  *See*

-7-

*Robbins v. Ryan's Family Steak Houses East, Inc.*, 223 F.R.D. 448 (S.D. Miss. 2004) (designation contained nothing more than names and addresses of six medical doctors, without information as to their status as injured plaintiff's treating physicians, opinions, or proposed testimony, and inadequacy was not cured by plaintiffs' egregiously dilatory supplemental responses ); *Duke v. Lowe's Homes Ctrs, Inc.*, No. 1:06cv207 P-D, 2007 WL 3094894 (N.D. Miss. Oct. 19, 2007).  That is not the case here. Cuevas informed the Defendants of her treating physician's causation opinion.  They are therefore not entitled to summary judgment for lack of causation evidence. Further, the supplemental designation of Dr. Johansen will not be stricken because it contains no new opinions.

## **Punitive Damages**

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Warren v. Derivaux*, 996 So. 2d 729, 738 (¶27) (Miss. 2008) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 629, 622 (Miss. 1988)).  "Punitive damages are only appropriate in the most egregious cases so as to discourage similar conduct and should only be awarded in cases where the actions are extreme."  *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 442 (¶20) (Miss. 1999) (citing *Wirtz v. Switzer*, 586 So. 2d 775, 783 (Miss. 1991)).  The totality of the circumstances and the aggregate conduct of the defendant must be considered when determining whether punitive damages are appropriate.  *Willard*, 754 So. 2d at 442.  "In the automobile context, the Mississippi

Supreme Court has been extremely reticent to permit punitive damages in cases involving the mere commission of traffic violations." *Walker v. Smitty's Supply, Inc.*, No. 5:06cv30 DCB-JMR, 2008 WL 2487793 at *6 (S.D. Miss. May 8, 2008).

Miss. Code Ann. §11-1-65 provides:

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

The defendant's conduct must include "some element of aggression, insult, malice, or gross negligence that evidences a ruthless disregard for the rights of others" in order to justify an award of punitive damages. *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (¶17) (Miss. 2006). Gross negligence is "that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Ezell v. Bellsouth Telecomm., Inc.*, 961 F. Supp. 149, 152 (S.D. Miss. 1997) (quoting *Dame v. Estes*, 101 So. 2d 644, 645 (Miss. 1958)). Wanton conduct has been defined to include an intentional act of unreasonable character and the reckless disregard of known or obvious risks that are so great as to make it highly probable that harm will follow. *Pigford v. Jackson Pub. Sch. Dist.*, 910 So. 2d 575, 579 (¶19) (Miss. Ct. App. 2005). "[Willful and wanton conduct] usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm would follow." *Pigford*, 910 So. 2d at 579(¶19) (quoting *Maldonado v. Kelly*, 768 So. 2d 906, 910 (¶8) (Miss. 2000)).

-9-

A. *T&J's Last Minute Seafood Express*:

T&J's argues that punitive damages may not be imposed on the theory of respondeat superior, and Cuevas cannot show anything beyond simple negligence that would justify punitive damages in any event.

Cuevas agrees that T&J's cannot be held vicariously liable for punitive damages. She argues that her claim is not based on respondeat superior. She claims that 1) T&J's knowingly put a vehicle on the road that had a defective coolant system which, in turn, contributed to the accident, and 2) T&J's participated in the failure to immediately contact law enforcement upon learning of the accident to conceal Hughes' drug use. The first ground is without evidentiary support, as discussed above. The second ground requires examination of the totality of the circumstances, as set out in the record.

Hughes testified that he called T&J's manager, Robert Sprinkle, to report the accident while he was waiting in the Home Depot parking lot. Sprinkle confirmed the phone conversation in his deposition:

> Q. And did you hear [Hughes's] testimony where he testified under oath that he called you from the parking lot of Home Depot in the early morning hours of December 5th and told you he had been in an accident?
>
> A. Yes, sir.
>
> Q. Is that true?
>
> A. Yes, sir.
>
> Q. Did you instruct Mr. Hughes to call law enforcement at that time?
>
> A. I didn't instruct him to. I asked him if they were on their way.

Q.  And what did he tell you?

A.  He said he hadn't seen the lights or sirens yet.  I assumed, you know, he had called them.

Q.  So he didn't tell you that he did call them but left you with the impression that he had called them?

A.  Exactly, yes, sir.

Q.  Did you talk to him more than once that morning?

A.  Just that one time.

 . . .

Q.  What did he tell you?

A.  He told me that he was in an accident, said that somebody come out of nowhere and hit him and took off.  That's what he told me.

 . . .

Q.  What did you tell him to do?

A.  Once he was through with the, you know, police, to go to Houma, finish his run.

T&J's Mtn. Part. Summ. J. Ex. 1, ECF No. 78-1 p. 6-7.

Sprinkle further testified that he first found out Hughes had not called the police later that night, when his secretary told him that a report of a tractor trailer hit and run was on the website of a Gulfport news station.  *Id*.  Sprinkle called Hughes to tell him about the report on the website, and that "if he didn't turn himself in I would."  *Id*. at 11.  T&J's informed Hughes to get a drug test as soon as possible.  *Id*. at 12-13. Hughes was "taken off the road" completely for at least two to three months as punishment for his conduct on the night of the accident, and is still not allowed to take

long trips for T&J's.  *Id*. at 13.  Sprinkle was not aware that Hughes had ever failed a drug and alcohol test while in T&J's employment.  *Id*. at 14.

After reviewing the record in the light most favorable to Cuevas, the Court finds that the conduct of T&J's in this case constitutes, at most, simple negligence.  Perhaps the communication between Hughes and Sprinkle on the night of the accident could have been better, but Cuevas's assertion that T&J's sought to protect Hughes from the consequences of his actions are not supported by any evidence.  As a result, T&J's is entitled to summary judgment in regard to Cuevas's punitive damages claim.

   *B. Hughes*:

Cuevas argues that Hughes' conduct in causing the accident and then leaving the scene "was one continuum of activity evincing a conscious disregard for the rights of others and Ms. Cuevas in particular."  Pl. Resp. 3, ECF No. 115.   Hughes argues that this is a garden-variety vehicular accident not warranting punitive damages.  Further, his post-accident conduct did not cause the accident and is therefore irrelevant to the issue of punitive damages.

In the Court's view, Hughes' post-accident conduct is relevant, because Cuevas alleges damages caused by Hughes's failure to come to her aid, or send someone to her aid, after the accident.  However, Cuevas's allegations are premised on her assertion that Hughes simply drove away after the accident and made no effort to stop and assist.  She was, unfortunately, unable to observe what happened after the accident.  Hughes testified that he did stop, ran back to where he thought the impact had occurred and looked around.  When he saw nothing, he assumed the driver had left the

-12-

scene.  The photo of Cuevas's vehicle after the accident shows it upside down on a slope, surrounded by trees and bushes.  Pl. Resp. Ex. A, ECF No. 113-1.  Cuevas testified that the police officer looking for her vehicle could not find it initially.  Hughes Mtn Part. Summ. J. Ex. C 48, ECF No. 82-3.  The police report states that the vehicle was not visible from the interstate.  Pl. Resp. Ex. F. 2, ECF No. 113-6.  In light of this evidence, the Court finds that the conduct of Hughes in this case constitutes, at most, simple negligence rather than a ruthless disregard for Cuevas's rights.  As a result, Hughes is entitled to summary judgment in regard to Cuevas's punitive damages claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [78] for Partial Summary Judgment, filed by T&J's Last Minute Seafood Express, Inc., is **DENIED** as to the causation issue and **GRANTED** in all other respects.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion [80] for Partial Summary Judgment on all Claims for Punitive Damages, filed by Timothy Hughes, is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion [93] to Strike Designation of Experts, filed by T&J's Last Minute Seafood Express, Inc., is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 13th day of May, 2011.

s/*Louis Guirola, Jr.*

Louis Guirola, Jr.
Chief U.S. District Judge

-13-